Good morning, and may it please the Court. My name is Rachel Jones from Heller Ehrman LLP. On behalf of Plaintiff Appellant Danny Santos Zamora, I'd like to reserve two minutes for rebuttal. Could you speak up a little, please? How's this? Are you appearing under our pro bono? Yes, I am. Thank you. We want to thank you. Is this loud enough? I never know with the microphones. The microphone's all right, but you're not speaking loud enough. Okay. I'll try. You can let me know if I — No, you're doing fine. Okay. If you — to the extent you can hear me at all, I'd like to begin with a few words about the search claim brought by Mr. Zamora and then turn to the jury instructions issue. Mr. Zamora had no notice whatsoever that his search claim was being considered in a summary judgment or any — any posture before the Court until he received the Court's order dismissing that claim. Appellees don't contest that he pled some form of a search claim in his complaint, and they also don't contest that there was no mention of it whatsoever in their opening papers for summary judgment, which was all that Mr. Zamora — Is this all the judge's idea? I beg — yes, it was — It's all the judge's idea? Yes. To — the judge stated in his order that he was granting summary judgment, that no one had ever asked him to consider it, and there had been no order to show cause. And so the first Mr. Zamora knew of it, he got the order saying the claim had been summarized. Well, the — Yes, that's correct. The defendant himself raised the issue in his papers. The — Mr. Zamora included facts relating to the search in his statement of facts to show the context of the events of that day, but he didn't raise any arguments about it or put it before the Court. He raised the issue of whether or not he was a trespasser or whether there was permission. So it — it was in the mix of the argument. I don't — What you're saying is that he may have referred to it, but he wasn't raising it as an issue. I do not believe that Mr. Zamora ever mentioned or discussed that he was a trespasser. The trespasser notion — Or the permission, either? He discussed the question of whether the officers had consent to enter the home, or That issue was relevant to the issue of excessive force, because it related to why the officers were in the house without a warrant, and then suddenly the altercation ensued. But he didn't — Mr. Zamora never — the issue of whether he was a — he had been residing at his parents' house for four months. He had all his things there. None of that was in any way discussed. His — his consent, Mr. Zamora's consent by his parents to live in the home. Yeah. There was no reason that should be before the Court, and he did not put it before the Court. So at the time this took place, did he raise any problem that he needed more time to submit materials or whatever? No. As a pro se litigant, incarcerated and not a lawyer, he received the district court's order saying the claim had been thrown out and — and alert the district court of what our problem is, not wait until later on. So my question is, did he indicate at that time that he had something else he wanted to submit or any type of objection? After receiving the order. He did not formally move for reconsideration. He didn't formally move. No. He did raise the issue — You're saying he informally moved? He did in numerous conferences and papers and in pretrial proceedings attempt to raise issues relating to the search and was repeatedly told by the Court that that issue had been disposed of during summary judgment proceedings. And how did the district court respond to his numerous motions to reopen? Again, he didn't file formal motions to reconsider or reopen the issue. He merely — he brought it informally to the Court's attention by trying to discuss it, and the Court not seeing any formal motion to reopen it. And there was also a change of judge at some point simply said, this — we've already granted summary judgment on the search claim, haven't we? And Mr. Zamora admitted that the Court had. If — if he wasn't raising that question, how was he hurt by the summary judgment? Well, he was hurt because he, in fact, did have a claim for an unlawful search under the Fourth Amendment. And he — Well, you said he didn't. Oh, he definitely raised in his complaint the claim for the search issue. The Court then dismissed that issue before any record had been made on it, before the parties, either party, in fact, knew that it was being considered by the Court. And then beyond that, Mr. Zamora failed to re-inject the dismissed search issue into the proceedings. But he certainly pled a search claim. It's undisputed that he pled a search claim in some form. The scope of that claim is disputed on appeal, but because there was no opportunity to make a record on it below, we don't have much information. Right. Well, let me ask you, we — we appreciate the counsels doing this pro bono, and we frequently ask where the record is kind of murky. We appoint counsel to clarify things for us. But as I understand it, this case, the — the excessive force claim was eventually tried to judge before Judge Campbell. That is correct. Who was a very good judge. And he lost. Yes. Now, what is it in the — in the search claim that he would have some — that would have some basis and provide damages for him that wasn't already disposed of in the — in the excessive force claim? The 1983 statute provides nominal damages where there's a constitutional violation as well as punitive damages. The record is not at all developed as to other damages that Mr. Zamora suffered because, again, of the stage at which it was thrown out before discovery had been conducted on the question of damages before Mr. Zamora had any opportunity to submit anything regarding damages for his search claim. Was the search the search of the house, or was it — Yes.  The parents consented to conduct an evidentiary search. And even after Mr. Zamora was removed — The parents surely consented to his entering. Yes. They — the parents consented to the police — They were key, even. In order to find Mr. Zamora and request that he be removed from the house. But this Court's law very clearly states that permission to find a person and affect the seizure of the person does not then also provide officers with the ability, even after the person is long removed, to continue with an evidentiary search and rummage around seeking whatever they might be able to find in the house after the person is long gone. And that is what occurred here. Well, the basis for it was no — no standing. And there was an indication it was their house. It was undisputed they kicked him out and said, don't come back. No. That's actually not undisputed, Your Honor. It certainly — the home is owned by the parents. And Mr. Zamora had been a full-time resident there for several months. That is — is in the record through the parents' affidavits and through various indications, papers in support of summary judgment. However, what is not in the record is that the parents ever kicked him out and told him not to come back. We have the police officer's hearsay statement, which had been admitted for the purpose of showing the officer's state of mind when they entered the house, but not for the truth of the matter asserted. The mother had said she had had a fight with her son and said, get out, get out. What we don't have is anything more concrete. Even if we looked at that inadmissible statement in the context of a fight the same morning that the police officers came, it could mean get out and never come back, or it could mean get out and take a walk around the block. I can't stand to look at you right now. There was nothing saying, remove your possessions, don't come back. I know you and your son have been staying here for months, but I don't want you living here anymore. There is no record whatsoever on those issues. And I don't think- What prejudice did he suffer as he developed the search? Are you referring to damages or prejudice from having the claim thrown out? No, from the search, did they discover anything that was damaging to him? They rummaged through his possessions, and as I understand it, and this is a little bit outside the record, created considerable havoc in the house. And they also seized a shotgun and seized a baby blanket. Mr. Zamora, there was no criminal, you know. But yes, things were seized and there were further proceedings and so forth. Again, there's not much record on this, and what record there is, is to a certain extent hearsay because none of it was submitted by the parties for this purpose. I see that I'm actually- You're out of time. Yeah. So I- Thank you. Well, I do some of your time. We helped you. And then I probably took a minute of explaining that I was too quiet in apologizing. Good morning, Your Honors. I'm Darrell Manhart. I represent the Defendants Smith and Wederhold. With respect to the summary judgment motion, Your Honor, there's a power of suggestion I'd like to overcome here, which is where the plaintiffs say, well, look at the court's order throwing out a search claim. There's nothing there that gave the plaintiff notice that this search for the shotgun was going to be disposed of. You have to start from the complaint, Your Honor. When you look at the plaintiff's amended complaint, there's no reference to any search for a shotgun. That's what their brief's based upon. The amended complaint is a single count for excessive force. Within the factual allegations underlying that, there's a reference there to a search where the plaintiff says that they forced the front door open and entered without consent. That's the only claim that was there. And when you look at the motion for summary judgment, it follows a similar pattern. It's addressed to excessive force. And in the facts stated in support of the motion, the defense counsel sets forth facts showing that there was consent to enter, that the parents who owned the residence had asked the deputies to remove their son and given them a key. There's no reference to a shotgun because there's been no pleading about any claimed search for a shotgun. When you look at the search at all, the yes, there was a search in the sense of entering to remove plaintiff. That is the only thing in the complaint, Your Honor. Well, maybe you could help me a little with how this arose. Did you try this case? I did not, Your Honor. Okay. But you're familiar with the record. I am, Your Honor. At some point, Judge Campbell decided that this issue was one that should be handled on summary judgment. Correct? Your Honor, the ---- Because the motion addresses the search, Your Honor. Okay. So I was ---- that's my second question. Yes. My second question is, what is it that triggered Judge Campbell's action? I apologize if I wasn't clear. I just explained that. That was my intent with the explanation, that the motion, so for summary judgment, just like the complaint, is labeled as for excessive force and addresses in the facts the search claim. You're telling me more than I want to know. Who brought the motion? Who made the motion? Yeah. The defense, Your Honor. Okay. So it was called to Judge Campbell's attention ---- Is this Judge Carroll or Judge Campbell? ---- by a motion to Judge Campbell for summary judgment. I believe Judge Carroll decided the motion, and Judge Campbell, I think, was the trial judge. Whomever. And then was that motion served upon the defendant? The defense motion was served upon the plaintiff. I mean on the plaintiff, yes. It was served on the plaintiff. Yes, Your Honor. Was there any response filed by the plaintiff? Certainly, Your Honor. And in his response, the plaintiff does address the search claim by arguing that there was a failure of the defendants to have a written consent signed by his parents and a failure to have his parents present during the search, and that is his own search. And I'd like to also point out, Your Honor, that while there's no claim in the opposition to the summary judgment with respect to a search, an additional search for a shotgun, it's the plaintiff who then attempts to use that evidence to his favor. He does make a reference to the shotgun in the sense that he points out that an evidentiary examination of that revealed no fingerprints, therefore none of his own, which he argued bolstered his claim. So he's the one using the shotgun in his attempt to further his excessive force claim, but he's not making any claim at all that there was an illegal search for the shotgun. He's only claiming that the consent from his parents was insufficient because it wasn't in writing. And I'd also like to point out, Your Honor, that you've going on to get to the merits, which is you can – it's interesting, but what I wanted to get to is the so-called sua sponte motion. Was there anything different from the – your motion, your client's motion for summary judgment, the opportunity for the defendant to respond, et cetera? Was there anything different than the rules you usually call for, other than perhaps problems that occurred because he happens to be pro se? I apologize. I do not understand your question, Your Honor. And I disagree with your premise, the plaintiff's premise, that it was sua sponte. But I'm – The argument is it's sua sponte. That is, the judge just decided there's summary judgment and without any warning made the decision himself. That's the argument the opposition makes. Yes. And I'm trying to find out specifically, without arguing the merits, the procedure. And you told us that you brought – your clients brought a motion for summary judgment to the defendant. There was a response from the defendant. The judge made a decision. Correct. Okay. Thank you. Okay. Well, Your Honor, the evidence that we have here that we're all arguing or that the plaintiffs and defendants are arguing about before you all comes from that summary judgment record as far as what was the consent and what was the nature of the search. So when the plaintiff argues that this wasn't – there wasn't any notice, well, certainly there must have been notice. How else did he know to put in the affidavits of his parents, which he's the one who put in, and he's the one that filed a supplemental fact statement with all the deposition testimony, and nowhere in there does he address any claimed search for a shotgun. He only challenges the entry, and his only challenge to the entry is based upon whether it was necessary for the defendants to have more than the parents' verbal consent and the handing to them of a key, but whether they had to have their written signature on a form along with their presence during the search. And that was not necessary. Also, the – while the plaintiffs here are arguing that the defendant – I'm sorry, that the plaintiff was a resident and should have had some additional expectations of privacy, there is no denying on their part that the affidavits that their client put in showed that his mother had directed the plaintiff to leave and that both parents had given the defendants the key, and that provides consent which is sufficient for their entry whether or not the plaintiff might have objected, because there's absolutely no record that he did object. Yes, Your Honor? You keep saying search for a shotgun. The question is not necessarily search for what, but search, isn't it? Your Honor, the only argument that I read from the plaintiff's brief is that they're trying to create a lack of fairness for their client because a search for a shotgun wasn't disposed of by the motion for summary judgment. They cannot get around the fact that the parent's consent was sufficient by itself for the entry to search for and seize him. Wasn't there a subsequent affidavit filed by the mother saying that she gave permission to enter but not to search? The affidavit says it has the word ransack. It says not to search and ransack the residence. That does not address the search for a shotgun, either. And furthermore, I'd suggest that arguing that the conceding that the parents have asked them to remove the son and then trying to put conditions on it, such as you may not use your weapons in my house, but you may go in and remove my son. If their son had the shotgun and had tried to shoot the officers, I don't think that the parents could have limited the consent in that way. And the same thing here. The ransacking of the residence apparently is a reference to the fight that ensued when the plaintiff struggled to escape from the officers after he had been handcuffed and they were trying to get him out of the premises. I don't believe that's fair to attach that or to let the mother condition the consent after the fact and thereby invalidate the search to seize the plaintiff himself. Did they call the police because he was ---- had a gun? Yes, Your Honor. The argument or, I'm sorry, the record shows that they told the deputies that he had fired a shotgun during the night, that he threatened his mother, taken the car keys from her, and refused to leave. Okay. I haven't addressed the jury instruction issue at all, Your Honor. That was stipulated, too, in a document that the plaintiff filed. Well, thank you. Is there any other questions on either of the two issues? No. Thank you very much. Are there any questions of the appellant from either of my colleagues? All right. Thank you. We have used the ---- you have used your time. Do you want to ---- are there any questions of the individualizing people who used your time? Well, yeah, I think that she's helped me. Do you want to respond? All right. Just briefly, I'll ---- a couple of citations. This issue of the search being artificially divided into the search for the person and the search for the shotgun, it's clear that consent to go into a house and search for a person does not then implicitly also permit police officers to go and search for evidence. The evidence that Defendant Appley's claim was submitted on this issue is in their opposing brief at pages 39 to 40. And if you look in the record, that really does only cite to incidental paragraphs in Mr. Zamora's statement of facts in his brief opposing summary judgment on the excessive force issue. It's very clearly tied to the excessive force debate. And that's in excerpts of record page 742, which is the statement of facts begins in excerpts of record page 738 and continues through that. This is just ---- this is a case where we haven't discussed the jury instructions issue, but it went to the core, the factors that really guided the jury's consideration of the core issue in the excessive force claim. Mr. Zamora did preserve it in numerous ways, as discussed in our brief. And when you think about the constitutional violations that occurred here, where the police hit a man who was already prone and handcuffed and then proceeded to a nonconsensual, warrantless evidentiary search, it's really clear that this is not the system of justice that we provide to anyone, pro se or otherwise. And the jury instruction, the failure in giving the jury all the factors to be considered and presenting only three factors that were not as relevant to this case, I think, clearly explained how that happened. So thank you for your time. Again, we appreciate counsel's participation in the pro bono work and the case just submitted for decision. We'll hear the last case for arguments over
judges: Wallace, Hug, Schroeder